## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CANEISHA MILLS )
1535 Half Street, SW )
#201 )
Washington, DC 20024 )
)
WILLIAM ROBINSON )
1324 Montello Avenue, NE )
Washington, DC 20002 )                 Civil Action No.:
)
LINDA LEAKS )
2548 University Place, NW )
Apt. E )
Washington, DC 20009 )
)
SARAH SLOAN )
505 13th Street, SE )
Apt. 2 )
Washington, DC 20003 )
)
     On behalf of themselves and others )
     similarly situated )
)
     Plaintiffs, )
v. )
)
DISTRICT OF COLUMBIA )
441 4th Street, N.W. )
Washington DC 20001 )
)
     Defendant )
)

## CLASS ACTION COMPLAINT

Some may say, "It can't happen here." Maybe in a book or a theatrical production. But not in real life. Not in the streets of the National's Capital city.

Police checkpoints used to stop and inspect drivers without suspicion of any crime. Armed police officers and roadblocks posted outside of neighborhoods to pull over all vehicles and question those who seek to enter as to their purpose in driving upon the city streets, to

1

interrogate citizens to disclose the names, phone numbers and contact information of their friends, family and associates (information which will first be "verified" to the officer's satisfaction and then be permanently catalogued and cross-referenced in a law enforcement data base). Checkpoint officers questioning residents about their associations, meetings, intentions, where they are traveling to, the purpose of their travel; demanding residents disclose the nature of their political activities and name their political associates if their stated intention is political; and allowing the privilege of vehicular entry or movement within the designated area based on police determination that the purposes of travel provided by residents seems sufficiently "legitimate." Large posters announce to those entering a police designated neighborhood that "failure to comply with such a request may result in arrest for 'Failure to Obey.'"

None of the above is a projection of a dark but hypothetical future.

It is all set out and authorized by the District of Columbia Metropolitan Police Department (MPD) Special Police Order SO-08-06, "Neighborhood Safety Zones," (NSZs) issued on June 4, 2008. While the use of roadblock seizure checkpoints to surround a neighborhood is a new policy, the MPD has maintained a long-standing practice of using roadway seizure checkpoints, also known as roadblocks, for the purposes of general crime control and also data collection on law abiding citizens. See, e.g., Allan Lengel, *The Washington Post*, "Safety Stops Draw Doubts: D.C. Police Gather Nonviolator's Data," May 2, 2005 at B1 (data collected on law abiding citizens secured through suspicionless "safety" checkpoints entered into master law enforcement database).

Neither the government nor the police would dare openly promote, much less implement such a dangerous and unprecedented expansion of police power in violation of citizen's rights except under the claim of an "emergency situation."

A grave situation does indeed exist today in the District of Columbia when it comes to street crime and personal security. Although the situation is far less acute than it was in the 1980's and early 1990's, it is real and the people want action, a remedy that matters.

The population of the District requires a solution and response to the very real problems arising from street crime and violence, which are neither inevitable nor a necessary component of summertime as some have suggested. People want their children to be able to walk the streets in their neighborhoods in a safe and secure environment. The District's military-style roadblock system was deployed, in part, to give the appearance that the government is addressing this deeply felt need. But it is neither constitutional, nor effective. There is an urgent need to tackle the problems of violence, street crime, unemployment and education. This roadblock does not address any of them.[1]

The protections of the Fourth Amendment were not stumbled upon by the Framers arbitrarily. It is a bulwark establishing minimal, but fundamental and essential, limitations on the encroachment of the state into private lives and movements. The Fourth Amendment was not enacted with a disregard for the compelling needs of government, it was established because in the name of such pressing asserted needs the government can and will inevitably seek to intrude upon and restrict individual freedoms. It will take little to morph the so-called Neighborhood Safety Zone checkpoint program from planning documents to trial implementations in Northeast Washington, DC, to the creation of ever-larger zones where the citizens are subject to a pass and identity system, their movements recorded and approved by police power. The curtain has now been raised on this real life drama.

---

[1] The recent Trinidad checkpoint was suspended after a night in which eight people were shot at six other locations throughout the District, See, Allison Klein and Clarence Williams, "Trinidad Driver Checks Halted, 8 People Shot Across District," *Washington Post*, June 13, 2008.

It is fundamental to the Fourth Amendment to the U.S. Constitution that, absent strictly limited special circumstances not present herein, the police may not stop and seize an individual, no matter how brief such seizure may be, in the absence of individualized suspicion of wrongdoing, probable cause or warrant. These protections of individual liberty are a bedrock principle enshrined within the Bill of Rights by the Framers against abusive and arbitrary exercise of the limited authority allowed to police.

Constitutional law is clearly established that roadway checkpoints where motorists are required by police to stop are unconstitutional where operated for the primary purpose of crime control, unless the police have conducted the stop based on individualized suspicion of criminal offense. See City of Indianapolis v. Edmond, 531 U.S. 32 (2000). Absent special circumstances not present herein, it is the existence of individualized suspicion that gives rise to police authority to conduct the stop.

The District of Columbia is well aware of this unavoidable constitutional requirement, having had its checkpoints ruled unconstitutional in the past. See Galberth v. United States, 590 A.2d 900 (D.C. 1991) (Montello Avenue checkpoint deemed unconstitutional where operated as a component of the purported anti-violent crime and anti-drug initiative Operation Clean Sweep).

Yet, despite the clearly established law and the history of checkpoints being deemed unconstitutional where operated for the purpose of general crime control in the absence of individualized suspicion, the District of Columbia has proceeded to institute the so-called "Neighborhood Safety Zone" Program for the expressly declared purpose of crime control. The NSZ Program establishes systems of roadway seizure checkpoints that are used to actually surround the perimeter of targeted neighborhoods.

4

The checkpoint program is anathema to the Constitution and in violation of clearly established law.

Plaintiffs seek the Court to enjoin the NSZ system of unconstitutional suspicionless checkpoints operated for the purpose of general crime control and to, more generally, enjoin the MPD from its long-standing practice of implementing unconstitutional roadway checkpoints for purposes of crime control in the absence of individualized suspicion. Plaintiffs seek also a halt to this unconstitutional system of using unlawful checkpoints and mass civil rights violations to collect and aggregate data on the movements and activities and stated intentions of law abiding residents of, and visitors to, the District. The records systems and databases whose stores of data have now been expanded with data collected on law abiding citizens as part of the "Neighborhood Safety Zone" checkpoint program should be expunged and wiped clean of such unlawfully and intrusively secured information.

The relief sought by the instant lawsuit is focused on the eradication of the persistent circumstance of unlawful police misconduct that is manifest in suspicionless seizures and roadblocks that broadly subject law abiding citizens, residents and visitors to routine police intervention, to demands under threat of arrest for disclosures of a personal and protected nature, to data collection on movement and activity and association - - all conducted by the police without *any* individualized suspicion or basis whatsoever.

Plaintiffs' challenge is not to any particular manifestation or operation of a particular checkpoint but it is to the unconstitutional policy and program of the checkpoints and data collection as delineated in Metropolitan Police Department (MPD) Special Police Order SO-08-06. The Council of the District of Columbia's Committee on Public Safety and the Judiciary held a lengthy public hearing into the checkpoints on June 16, 2008. In response to questioning from

Councilmembers Phil Mendelson and Mary Cheh who raised serious questions and concerns about the checkpoint program, both Attorney General Peter Nickles and Police Chief Cathy Lanier testified that they did not question the constitutionality or efficacy of the program and intended for it to continue, checkpoints to be deployed as they see fit.

The relief requested by the instant lawsuit does not affect the ability of the government to use and implement constitutional means and effective programs for the purpose of crime deterrence. The focus is the enjoining of the unlawful police tactic of conducting widespread civil rights violations through this unconstitutional program, through unconstitutional checkpoints in general, and the recovery of the data that has been wrongfully collected on law-abiding citizens through the unconstitutional NSZ checkpoint program.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to hear this complaint pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) and (4) (civil rights jurisdiction).

2. Venue is appropriately vested in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise to the claims herein occurred in the District of Columbia.

## PARTIES

1. Plaintiff CANEISHA MILLS is a Howard University student and a hotel worker, a resident of the Southwest quadrant of Washington, DC, and a licensed motor vehicle operator. Plaintiff Mills was stopped by the Metropolitan Police Department at an NSZ Checkpoint on June 7, 2008 and prohibited from entry by car when she did not wish to provide personal information regarding her identity and activities.

2. Plaintiff WILLIAM ROBINSON is a retired D.C. schoolteacher and has been a resident of the Trinidad neighborhood in the Northeast quadrant of Washington, DC. for more than 50 years.  Plaintiff Robinson was prohibited from driving on his route to his home and funneled and redirected in a circuitous route by the Metropolitan Police Department intended to force him through a checkpoint during the period of the June 2008 checkpoint operation. At one roadblock he was stopped by armed police and told that he could not proceed to his house without providing identity information. Mr. Robinson refused to deliver his driver's license to the officer.

3. Plaintiff LINDA LEAKS is an advocate for affordable housing and community organizer and a resident of the Northwest quadrant of Washington, DC.  Plaintiff Leaks was stopped by an officer of the Metropolitan Police Department at an NSZ Checkpoint located on Montello Avenue on June 7, 2008. She was required to provide her identification information, and did so, but was prohibited from continuing further in her vehicle because she did not wish to provide details about political activity and intended community organizing. Ms. Leaks advised that she had political materials that she needed to bring in with her by car, but was still prohibited from proceeding.

4. Plaintiff SARAH SLOAN is a community organizer and a resident of the Southeast quadrant of Washington, DC.  Plaintiff Sloan was stopped by an officer of the Metropolitan Police Department at an NSZ Checkpoint located on Montello Avenue on June 11, 2008.  The officer informed Ms. Sloan that she had to provide her driver's license, which she did.  The officer took Ms. Sloan's license and questioned Ms. Sloan about her intended activities in the designated Neighborhood Safety Zone.  Ms. Sloan informed the officer she was attending a political meeting in the area.  The officer asked

for information about the meeting which Ms. Sloan stated she did not wish to provide. The Officer advised Ms. Sloan that she could not proceed past the NSZ Checkpoint unless she provided the requested information and, as a result, Ms. Sloan was barred from proceeding past the NSZ Checkpoint in her car.

5.  Defendant DISTRICT OF COLUMBIA is a municipal corporation and constitutes the local government of Washington, D.C.

## FACTS

6.  On June 4, 2008, the District of Columbia Metropolitan Police Department (MPD) issued Special Order SO-08-06, "Neighborhood Safety Zones."

7.  Special Order SO-08-06 defines a Neighborhood Safety Zone (NSZ) as a "[d]elineated geographic area designated by the Chief of Police in response to documented crimes of violence the purpose of which is to provide high police visibility, prevent and deter crime, safeguard officers and community members, and create safer District of Columbia neighborhoods." (Special Order at 1).

8.  The Special Order defines Neighborhood Safety Zone Checkpoint as "[a] location at the perimeter of the NSZ where vehicles are stopped for the purpose of determining whether the operator has a legitimate reason for entering the NSZ." (Special Order at 2).

9.  Special Order SO-08-06 directs officers to stop all vehicles at designated checkpoints without regard to the presence of individualized suspicion of crime. See Special Order at 2.

10. Special Order SO-08-06 directs officers to prominently distribute and post large posters that warn that noncompliance may result in arrest (Special Order at 7), and that specifically state: "**NOTICE This area has been declared a NEIGHBORHOOD**

**SAFETY ZONE BY ORDER OF THE CHIEF OF POLICE. VEHICLES ENTERING THIS AREA ARE SUBJECT TO STOP. OPERATORS MUST PROVIDE IDENTIFICATION.** Vehicles entering this area will be stopped to determine whether the vehicle's operator has a legitimate reason for entering the Neighborhood Safety Zone. Identification will be requested of the driver of the vehicle. Failure to comply with such a request may result in arrest for 'Failure to Obey' per Title 18 DCMR §2000.2" (NSZ Poster distributed by MPD).

11. The primary purpose of the Neighborhood Safety Zone program is to control and deter crime, including violent crime.

12. Special Order SO-08-06 represents that "The establishment of Neighborhood Safety Zones is an effective law enforcement tool **for addressing violent crime**." (Special Order at page 1) (emphasis added).

13. Special Order SO-08-06 represents that "the purpose of [the NSZ checkpoint program] is to provide high police visibility, **prevent and deter crime**, safeguard officers and community members, and **create safer District of Columbia neighborhoods**." (Special Order at page 1) (emphasis added).

14. In a June 4, 2008 news release from Mayor Adrian Fenty and Chief of Police Cathy Lanier, they represented that the NSZ program is a "**targeted initiative[] aimed at reducing criminal activity** and increasing quality of life in at-risk communities." (emphasis added). They also represented that "The program will authorize Metropolitan Police Department to set up public safety checks to help safeguard community members and create safer neighborhoods in the District by increasing police presence **aimed at deterring crime**." (emphasis added). According to Chief Lanier, "The Neighborhood

Safety Zones is just **another tool MPD will employ to stop crime before it happens**. . . ." (emphasis added)

15. According to Special Order SO-08-06, the NSZ checkpoints may be "established solely in response to documented crimes of violence occurring in a designated location." (Special Order at 2).

16. An ancillary stated purpose of the checkpoints is to stop every vehicle and to exclude from entry any vehicle except those where the motor vehicle operator presents and is able to provide to an officer's satisfaction 'a legitimate reason' for entry into the neighborhood. (Special Order at 2, 4).

17. Special Order SO-08-06 requires officers assigned to an NSZ to "[i]nquire whether the operator of the stopped vehicle has a <u>legitimate</u> reason for entering the NSZ..." (Special Order at 4) (emphasis included in original).

18. The checkpoint officer is not to accept the stated reason at face value, but is to "[r]equire proof of the reason." (Special Order at 5).

19. The officer is then to question the individual further in order to elicit "information sufficient for the [officer] to verify the accuracy of the reason." (Special Order at 5).

20. A driver seeking to visit friends or family is required to disclose, for example, the identity of their friend(s) or family along with telephone number, contact information and address. The police may then place a call to, or otherwise contact, the driver's friend(s) or family for verification. (Special Order at 5).

21. Under Special Order SO-08-06, officers must "[d]eny a stopped vehicle access to the NSZ when it is determined that the motor vehicle operator does not have a legitimate reason for entering the NSZ." (Special Order at 5).

22. Special Order SO-08-06 sets forth six specific circumstances which are deemed to be "legitimate," only upon verification. (Special Order at 4).

23. These six circumstances are: "a. The person resides in the NSZ; b. The person is employed in the NSZ or is on a commercial delivery; c. The person attends school or a day-care facility, or is taking a child to, or picking up a child from, a school or day-care facility in the NSZ; d. The person is a relative of a person who resides in the NSZ; e. The person is seeking medical attention, is elderly, or is disabled; and/or f. The person is attempting to attend a verified organized civil, community or religious event within the NSZ." (Special Order at 4).

24. The six specific circumstances do not include or encompass "visiting a friend." (Special Order at 4).

25. The six circumstances do not include or encompass "going to pick up groceries." (Special Order at 4).

26. The six circumstances do not include or encompass a wide range of lawful activities that are a part of ordinary life. (Special Order at 4).

27. Checkpoint officers are directed by the Special Order that the <u>only</u> time entry is allowed beyond the six enumerated circumstances is if there is present "exigent circumstances" <u>and</u> where "an official the rank of Sergeant or above assigned to the NSZ approved the entry." (Special Order at 4).

28. Special Order SO-08-06 requires documentation of each stop of a vehicle at a NSZ Checkpoint on a PD Form 76 (Stop or Contact Report) (Special Order at 6).

29. Each PD Form 76, the "Stop or Contact Report," bears fields for the recordation of an individual's name, home address, phone number, gender, race, date of birth, height and

weight, eye color, hair color, complexion, driver's license number and other identifying physical characteristics. It also has a field to record whether the individual was a passenger in a vehicle.

30. The information secured from vehicle stops is used for police intelligence purposes.

31. Information secured from vehicle stops is entered into police record keeping systems and/or databases.

32. In a news release issued June 4, 2008, the same day Special Order SO-018-06 was issued and effective, Adrian M. Fenty, Mayor of the District of Columbia, and Metropolitan Police Chief Cathy Lanier announced the Neighborhood Safety Zone "initiative" and announced that "[t]he NSZ will be launched next week in the Trinidad area."

33. Starting on the evening of June 7, 2008 and continuing intermittently for six days, the MPD set up and operated a Neighborhood Safety Zone Checkpoints in the Trinidad neighborhood of Washington, D.C.

34. On information and belief, and based upon MPD statements to the media, at least 700 drivers were stopped in their vehicles at the NSZ Checkpoints located in Trinidad.

### CLASS ACTION ALLEGATIONS RELATED TO DECLARATORY AND INJUNCTIVE RELIEF TO ENJOIN FUTURE IMPLEMENTATION OF CHECKPOINTS

35. The proposed class is: All residents of the District of Columbia who possess a motor vehicle operator or "driver's" license.

36. The proposed class, and their claims, satisfy the requirements of Rules 23(a) and (b)(2).

37. The class of persons is composed, collectively, of many tens of thousands of persons and is too numerous for joinder.

38. By initiating the Neighborhood Safety Zone program which implements a program of checkpoints within the District of Columbia in the absence of individualized suspicion for the purpose of crime control, the District has acted on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

39. The claims for declaratory and injunctive relief enjoining operation of the unconstitutional checkpoint program are typical of the claims and constitutional interests of the class as a whole.

40. The named plaintiffs consisting of plaintiffs MILLS, ROBINSON,  LEAKS and SLOAN will fairly and adequately represent the class.

## CLASS ACTION ALLEGATIONS RELATED TO EXPUNGEMENT OF RECORDS AND DATA COLLECTED AT NSZ CHECKPOINTS

41. The proposed class is all motor vehicle operators who have been stopped at NSZ checkpoints.

42. The class of persons is composed of over seven hundred persons based on the recent implementation of NSZ checkpoints in the Trinidad neighborhood, and will be composed of hundreds or thousands of additional others upon further checkpoint implementations.

43. By collecting and recording data about motor vehicle operators who have been stopped as part of the operation of the unconstitutional Neighborhood Safety Zone checkpoint program, the District has acted on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

44. The named plaintiffs' claims for declaratory and injunctive relief seeking records expungement are typical of the claims and constitutional interests of the class as a whole.

45. Each of the named plaintiffs MILLS, LEAKS and SLOAN was stopped at NSZ checkpoints and subject to data collection including recordation of information on PD Form 76 (Stop or Contact Report) and possibly on other records including those considered "intelligence" records.

46. The data collection was ancillary to, and a function of, an unconstitutional checkpoint program and was collected solely through civil rights violations.

47. The named plaintiffs consisting of plaintiffs MILLS, LEAKS and SLOAN will fairly and adequately represent the class.

## COUNT ONE
### (42 U.S.C. §1983, U.S. Constitution)

48. Plaintiffs herein incorporate and reallege paragraphs 1 through 47.

49. The Neighborhood Safety Zone checkpoint program is an unconstitutional program and policy of suspicionless seizures operated for the primary purpose of general crime control. The effect of this unconstitutional policy is to cause constitutional deprivations to the plaintiffs and class members.

50. The Neighborhood Safety Zone checkpoint program is ineffective to achieve any constitutionally allowable purpose.

51. The Neighborhood Safety Zone checkpoint program is more than "minimally intrusive" and requires persons seized at the checkpoints to undergo a questioning and verification process so broad as to countenance police contacting third parties, friends, families and associates to "verify" the stated intention for driving into the neighborhood.

14

52. Plaintiffs have each been, and will in the future continue to be, deprived of their

constitutional rights to be able to travel upon the roadways free of unreasonable seizure in

violation of the Fourth Amendment. Each has suffered such constitutional deprivation

and related inconvenience and/or loss of privacy as a direct consequence of the

unconstitutional checkpoint system.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiffs respectfully request this Honorable Court:

A.  Declare the Metropolitan Police Department Special Order SO-08-06 to be
    unconstitutional;

B.  Issue an injunction to enjoin operation of the Neighborhood Safety Zone Checkpoints
    under Special Order SO-08-06;

C.  Issue an injunction to enjoin operation of roadway seizure checkpoints the primary
    purpose of which is general crime control;

D.  Expunge any and all information collected and recorded in any law enforcement database
    as a result of the operation of the Neighborhood Safety Zone Checkpoints;

E.  Award compensatory or nominal damages for the deprivation of constitutional rights and
    inconvenience and intrusion suffered by each plaintiff on an individual basis;

F.  Award reasonable attorneys' fees and costs; and

G.  Award any other relief the Court deems just and appropriate.

June 20, 2008                              Respectfully submitted,


Mara Verheyden-Hilliard [450031]
PARTNERSHIP FOR CIVIL JUSTICE
617 Florida Avenue, NW
Washington, D.C. 20001
(202) 232-1180
(202) 350-9557 fax


Carl Messineo [450033]
PARTNERSHIP FOR CIVIL JUSTICE
617 Florida Avenue, NW
Washington, D.C. 20001
(202) 232-1180
(202) 350-9557 fax

I hereby verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on June 20, 2008.

_Sarah Sloan_
Sarah Sloan

08-1061
RJL

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Caneisha Mills, William Robinson, Linda Leaks, Sarah Sloan, on behalf of themselves and others similarly situated | District of Columbia |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   11001
(EXCEPT IN U.S. PLAINTIFF CASES)

11001

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY) ———
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAN

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Carl Messineo and Mara Verheyden-Hilliard
Partnership for Civil Justice
617 Florida Avenue, NW
Washington, DC 20001
(202) 232-1180

ATT

Case: 1:08-cv-01061
Assigned To : Leon, Richard J.
Assign. Date : 6/20/2008
Description: Civil Rights-Non-Employ.

---

| II. BASIS OF JURISDICTION | III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX |
|---|---|
| (PLACE AN x IN ONE BOX ONLY) | FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!** |

|  |  |
|---|---|
| ○ 1 U.S. Government Plaintiff | ⦿ 3 Federal Question (U.S. Government Not a Party) |
| ○ 2 U.S. Government Defendant | ○ 4 Diversity (Indicate Citizenship of Parties in item III) |

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**

(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

| ○ A. *Antitrust* | ○ B. *Personal Injury/ Malpractice* | ○ C. *Administrative Agency Review* | ○ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>Social Security:<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>Other Statutes<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ○ E. *General Civil (Other)* | OR | ○ F. *Pro Se General Civil* |
|---|---|---|

| | |
|---|---|
| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability<br><br>**Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation<br><br>☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

②

| G. *Habeas Corpus/* *2255* | H. *Employment Discrimination* | I. *FOIA/PRIVACY ACT* | J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| K. *Labor/ERISA (non-employment)* | ◉ L. *Other Civil Rights (non-employment)* | M. *Contract* | N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☒ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Court from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

41 U.S.C. § 1983, U.S. Constitution – unconstitutional seizure in violation of the Fourth Amendment

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ☒ ACTION UNDER F.R.C.P. 23 | DEMAND $ _____ JURY DEMAND: | Check YES only if demanded in complaint YES ☐  NO ☐ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE    June 20, 2008    SIGNATURE OF ATTORNEY OF RECORD    _____

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.