**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CANEISHA MILLS, *et al.*, | : |
| Plaintiff, | : |
| v. | :   Civ. Action No. 08-1061 (RJL) |
| DISTRICT OF COLUMBIA, | :   **Jury Trial demanded** |
| Defendant. | : |

**ANSWER OF DEFENDANT DISTRICT OF COLUMBIA**

Defendant, District of Columbia ("Defendant"), by and through its undersigned counsel, the Office of the Attorney General for the District of Columbia, responds to the Complaint as follows:

**FIRST DEFENSE**

The Complaint fails to state a cause of action upon which relief can be granted.

**SECOND DEFENSE**

Defendant responds to the prefatory assertions and numbered paragraphs of the Complaint as follows:

The prefatory remarks set forth on the first six pages of the Complaint that precede "Jurisdiction And Venue"¶ 1 are the conclusions of the pleader and require no response; to the extent that they do require a response, they are denied.

**"Jurisdiction And Venue" Allegations**

1.      This paragraph reflects the pleader's legal conclusions and, accordingly, does not require a response; to the extent that a response is required the allegations are denied.

2.      This paragraph reflects the pleader's legal conclusions and, accordingly, does not require a response; to the extent that a response is required the allegations are denied.

**"Parties" Allegations**

1.      Defendant lacks knowledge or information to formulate a belief as to the truth of the allegations contained in this paragraph.

2.      Defendant lacks knowledge or information to formulate a belief as to the truth of the allegations contained in this paragraph.

3.      Defendant denies the allegations of the fourth sentence of this paragraph, except admits that Ms. Leaks was prohibited from proceeding into the NSZ in her vehicle.  Defendant denies the allegations of the third sentence of this paragraph, except admits that Ms. Leaks was denied entry into the NSZ in her vehicle.  Defendant lacks knowledge or information to formulate a belief as to the truth of the allegations of the first sentence of this paragraph. Defendant admits the allegations of the second sentence of this paragraph.

4.      Defendant denies the allegations of the last two sentences of this paragraph, except Defendant admits that an officer of the Metropolitan Police Department advised plaintiff Sloan that she could not proceed past the NSZ checkpoint on June 11, 2008.  Defendant further admits the allegations contained in the second sentence of this paragraph, that Plaintiff Sloan was stopped by an officer of the MPD at an NSZ checkpoint located on Montello Avenue on July 11, 2008.  Defendant lacks knowledge or information to formulate a belief as to the truth of the remaining allegations contained in this paragraph.

5.      Defendant admits the allegations of this paragraph.

**"Facts" Allegations**

6.      Defendant admits the allegations of this paragraph.

7.      In response to this paragraph, Defendant affirmatively states that MPD Special Order-08-06, initially published on June 4, 2008, has been revised on three occasions: June 13, 2008, June 18, 2008, and June 24, 2008. As a result, Special Order-08-06, effective June 4, 2008 ("SPO.I"), which is the only iteration of the Special Order discussed in the Complaint, is no longer in effect. Similarly, MPD Special Order-08-06, effective June 13, 2008 ("SPO.IA"), is no longer in effect, and Special Order-08-06, effective June 18, 2008 ("SPO.II"), is no longer in effect. Defendant denies the allegations of this paragraph except to the extent that Special Order-08-06, effective July 24, 2008 ("SPO.III"), a copy of which is annexed as Answer Exh. 1, which is the best evidence regarding the allegations, reflects the language within quotation marks in this paragraph verbatim, but admits that SPO.I defined a "Neighborhood Safety Zone" as alleged.

8.      Defendant denies the allegations of this paragraph with regard to the currently effective NSZ Special Order, SPO.III, but admits that SPO.I defined a "Neighborhood Safety Zone Checkpoint" as alleged.

9.      Defendant denies the allegations of this paragraph except to the extent that SPO.I, a copy of which is annexed as Answer Exh. 2, which is the best evidence regarding the allegations, reflects the language alleged in this paragraph verbatim.

10.     Defendant denies the allegations of this paragraph except to the extent that SPO.I, a copy of which is annexed as Answer Exh. 2, which is the best evidence regarding the allegations, reflects the language alleged in this paragraph verbatim, but admits that posters required by SPO.I contain the language quoted in this paragraph.

11.     Defendant denies the allegations of this paragraph.

12.     Defendant admits that SPO.I represents that "The establishment of Neighborhood Safety Zones is an effective law enforcement tool for addressing violent crime."

13.     Defendant denies the allegations of this paragraph except to the extent that SPO.I, a copy of which is annexed as Answer Exh. 2, which is the best evidence regarding the allegations, reflects the language alleged in this paragraph verbatim.

14.     Defendant denies the allegations of this paragraph except to the extent that a press release issued jointly by Mayor Adrian Fenty and Chief of Police Cathy Lanier on June 4, 2008, which would be the best evidence regarding the allegations, reflects the language alleged in this paragraph verbatim, and not in a context which is inconsistent with or ambiguous relative to the allegations of this paragraph.

15.     Defendant denies the allegations of this paragraph except to the extent that SPO.I, a copy of which is annexed as Answer Exh. 2, which is the best evidence regarding the allegations, reflects the language alleged in this paragraph verbatim.

16.     Defendant denies the allegations of this paragraph.

17.     Defendant admits the allegations of this paragraph.

18.     Defendant denies the allegations of this paragraph, except admits that SPO.I provides that shall "[r]equire proof of the reason" for entry proffered by the operator of a vehicle entering an NSZ checkpoint.

19.     Defendant denies the allegations of this paragraph except to the extent that SPO.I, a copy of which is annexed as Answer Exh. 2, which is the best evidence regarding the allegations, reflects the language alleged in this paragraph verbatim.

20.     Defendant denies the allegations of this paragraph except to the extent that SPO.I, a copy of which is annexed as Answer Exh. 2, which is the best evidence regarding the allegations, reflects the language alleged in this paragraph verbatim.

21.     Defendant admits the allegations of this paragraph.

22.     Defendant denies the allegations of this paragraph except to the extent that SPO.I, a copy of which is annexed as Answer Exh. 2, which is the best evidence regarding the allegations, reflects the language alleged in this paragraph verbatim.

23.     Defendant denies the allegations of this paragraph except to the extent that SPO.I, a copy of which is annexed as Answer Exh. 2, which is the best evidence regarding the allegations, reflects the language alleged in this paragraph and the preceding paragraph verbatim.

24.     Defendant admits the allegations of this paragraph.

25.     Defendant admits the allegations of this paragraph.

26.     This paragraph reflects the pleader's conclusions and, accordingly, does not require a response; to the extent that a response is required the allegations are denied.

27.     Defendant admits the allegations of this paragraph.

28.     Defendant admits the allegations of this paragraph.

29.     Defendant admits the allegations of this paragraph.

30.     Defendant denies the allegations of this paragraph.

31.     Defendant denies the allegations of this paragraph except to the extent that SPO.I, a copy of which is annexed as Answer Exh. 2, which is the best evidence regarding the allegations, reflects the language alleged in this paragraph verbatim.

32.     Defendant denies the allegations of this paragraph except to the extent that a press release issued jointly by Mayor Adrian Fenty and Chief of Police Cathy Lanier on June 4, 2008, which would be the best evidence regarding the allegations, reflects the language alleged in this paragraph verbatim, and not in a context which is inconsistent with or ambiguous

relative to the allegations of this paragraph. Defendant further denies that a Special Order SO-018-06 was issued or became effective on June 4, 2008.

33.     Defendant denies the allegations of this paragraph, except admits that on June 7, 2008, the MPD set up and intermittently operated Neighborhood Safety Zone checkpoints in the Trinidad neighborhood of Washington, D.C. for five days.

34.     Defendant lacks knowledge or information to formulate a belief as to the truth of the allegations contained in this paragraph.

**Putative "Class Action Allegations Related To Declaratory And Injunctive Relief To Enjoin Future Implementation Of Checkpoints" Allegations**

35.     This paragraph reflects the pleader's legal conclusions and, accordingly, does not require a response; to the extent that a response is required, the allegations are denied.

36.     This paragraph reflects the pleader's legal conclusions and, accordingly, does not require a response; to the extent that a response is required, the allegations are denied.

37.     This paragraph reflects the pleader's legal conclusions and, accordingly, does not require a response; to the extent that a response is required, the allegations are denied.

38.     This paragraph reflects the pleader's legal conclusions and, accordingly, does not require a response; to the extent that a response is required, the allegations are denied.

39.     This paragraph reflects the pleader's legal conclusions and, accordingly, does not require a response; to the extent that a response is required, the allegations are denied.

40.     This paragraph reflects the pleader's legal conclusions and, accordingly, does not require a response; to the extent that a response is required the allegations are denied.

**Putative "Class Action Allegations Related To Expungement Of Records And Data Collected At NSZ Checkpoints"**

41.    This paragraph reflects the pleader's legal conclusions and, accordingly, does not require a response; to the extent that a response is required, the allegations are denied.

42.    This paragraph reflects the pleader's legal conclusions and, accordingly, does not require a response; to the extent that a response is required, the allegations are denied.

43.    This paragraph reflects the pleader's legal conclusions and, accordingly, does not require a response; to the extent that a response is required, the allegations are denied.

44.    This paragraph reflects the pleader's legal conclusions and, accordingly, does not require a response; to the extent that a response is required, the allegations are denied.

45.    This paragraph reflects the pleader's legal conclusions and, accordingly, does not require a response; to the extent that a response is required, the allegations are denied.

46.    Defendant denies the allegations of this paragraph.

47.    This paragraph reflects the pleader's legal conclusions and, accordingly, does not require a response; to the extent that a response is required, the allegations are denied.

**"Count One" Allegations**

48.    This paragraph reflects the pleader's legal conclusions and, accordingly, does not require a response; to the extent that a response is required the allegations are denied.  Further, Defendant realleges its responses to paragraphs 1 through 47 with the same force and effect as though they were restated here in full.

49.    Defendant denies the allegations of this paragraph.

50.    Defendant denies the allegations of this paragraph.

51.    This paragraph reflects the pleader's legal conclusions and, accordingly, does not require a response; to the extent that a response is required the allegations are denied.

52.    Defendant denies the allegations of this paragraph.

**"Prayer for Relief" Allegations**

53.    The remaining allegations of the Complaint comprise Plaintiffs' Prayer for Relief and, accordingly, do not require a response; to the extent that a response is required the allegations are denied.

54.    In further response to the Complaint, any and all allegations not specifically admitted herein, are denied.

### THIRD DEFENSE

To the extent Plaintiffs have suffered any damages as alleged in the Complaint, the Plaintiffs failed to mitigate their damages.

### FOURTH DEFENSE

The Plaintiffs' requests for non-monetary relief alleged in the Complaint are moot.

### JURY DEMAND

Defendants demand trial by a jury of the maximum number of jurors permissible of all claims herein so triable.

Respectfully submitted,

PETER J. NICKLES
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

ELLEN EFROS [250746]
Assistant Deputy Attorney General
Chief, Equity Section I

 /s/  Thomas L. Koger
THOMAS L. KOGER [427921]
Senior Assistant Attorney General

  /s/ Chad Copeland
CHAD COPELAND[1]
Assistant Attorneys General
Civil Litigation Division
441 4th Street, NW
Suite 600 South
Washington, DC 20001
Tel: (202) 724-6610
Fax: (202) 727-3625

Counsel for Defendant District of Columbia

---

[1]    DC Bar Application pending. Member of Texas Bar in good standing. Authorized by the Office of the Attorney General for the District of Columbia to provide legal services pursuant to Rules of the United States District Court for the District of Columbia Local Rules 83.2(d) and 83.2(e).

Answer Exh. 1
MPD Special Order-08-06,
effective July 24, 2008

# SPECIAL ORDER



**DISTRICT OF COLUMBIA**

Subject
**Neighborhood Safety Zones**

Topic  Series  Number
**SO - 08 - 06**

Effective Date
**July 24, 2008**

Rescinds:
SO-08-06 (Neighborhood Safety Zones), Effective Date June 13, 2008
SO-08-06 (Neighborhood Safety Zones), Effective Date July 18, 2008
Teletype 07-066-08 (Neighborhood Safety Zone UPDATE and Special Order Change), Dated July 19, 2008
Related to:
  General Order 304.10 (Police-Citizen Contacts, Stops and Frisks), Effective July 1, 1973
  GO-OPS-301.03 (Vehicular Pursuits), Effective February 25, 2003

| | | | | | | |
|---|---|---|---|---|---|---|
| I. | Background | Page 1 | | V. | Procedural Guidelines | Page 3 |
| II. | Policy | Page 1 | | VI. | Cross References | Page 12 |
| III. | Definitions | Page 2 | | VII. | Attachments | Page 12 |
| IV. | Regulations | Page 2 | | | | |

## I.    BACKGROUND

The establishment of Neighborhood Safety Zones is an effective law enforcement tool for addressing violent crime. Vehicles are common instrumentalities of crime, particularly armed violent crime.  It is in the interest of law enforcement to prohibit vehicles with no legitimate purpose to enter neighborhoods that have been victimized by spikes in violent crime. The Second Circuit Court of Appeals found that such zones are constitutional when limited in scope and when conducted for a legitimate law enforcement purpose.  Further, the United States Supreme Court has upheld the validity of checkpoints to serve significant law enforcement/public safety concerns other than general criminal law enforcement.

This Special Order provides guidance for establishing Neighborhood Safety Zones, consistent with constitutional requirements which: (1) Provide high police visibility, (2) Prevent and deter crime, (3) Safeguard officers and community members, and (4) Create safer District of Columbia neighborhoods.  The primary purpose of an NSZ is not to make arrests or to detect evidence of ordinary criminal wrongdoing, but to increase protection from violent criminal acts, and promote the safety and security of persons within the NSZ by discouraging--and thereby deterring--persons in motor vehicles from entering the NSZ intending to commit acts of violence.

## II.    POLICY

It is the policy of the Metropolitan Police Department to lawfully establish Neighborhood Safety Zones to promote the health, safety, and welfare of District of Columbia residents and visitors.

## III.    DEFINITIONS

When used in this directive, the following terms shall have the meaning designated:

1.    Member – Sworn employee of the Metropolitan Police Department (MPD), or MPD Reserve Corps member.

2.    Neighborhood Safety Zone (NSZ) – Geographic area designated by the Chief of Police in response to documented crimes of violence the purpose of which is to provide high police visibility, prevent and deter crime, safeguard officers and community members, and create safer District of Columbia neighborhoods.

3.    Neighborhood Safety Zone Entry Checkpoint – A location at any point along the perimeter of or within the NSZ where vehicles are stopped for the purpose of determining whether the operator has a legitimate reason for entering the NSZ.

4.    Neighborhood Safety Zone Manager – Member the rank of Lieutenant or above who manages the individual Neighborhood Safety Zone operation.

5.    Neighborhood Safety Zone (NSZ) Manager's Report (PD Form 907-A) (Attachment A) – Report completed by the NSZ Manager for each tour of duty during which an NSZ is operational.

## IV.    REGULATIONS

A.    An NSZ may be established solely in response to documented crimes of violence occurring within the designated neighborhood.

1.    The NSZ shall be established for a specific and legitimate law enforcement purpose (e.g., recently reported criminal incident(s) including homicides, shootings, robberies, and other offenses as approved by the Chief of Police).

2.    The NSZ shall be targeted to promote community safety interests while minimizing interference with normal community activities.

3.    Consistent with Part V.L below, each NSZ Entry Checkpoint shall be conducted systematically so as to minimize or eliminate police officer discretion in stopping vehicles from entering the NSZ.

4.    The NSZ shall be established for no more than five (5) days unless the Chief of Police approves an extension of no more than five (5) additional days, and only during the time periods approved by an official the rank of Commander or above.

B.   The recommendation to establish an NSZ, and the identification of the location for the NSZ, shall be made by an official the rank of Commander and above.

C.   Each NSZ shall be approved, in advance, by the Chief of Police or designee, provided that the designee shall not hold a rank lower than Assistant Chief of Police.

D.   Only those members who have successfully completed all NSZ-related training required by the Chief of Police may be assigned to an NSZ Entry Checkpoint.  Other members may serve in other capacities in other locations within the zone.

E.   Members assigned to an NSZ Entry Checkpoint shall wear an MPD-approved visibility vest and be provided other required equipment (e.g., cones, light tower).

F.   While an NSZ is in effect, members shall not stop vehicles that are exiting the NSZ.  However, traffic stops based on reasonable suspicion, probable cause, or in response to lookouts are authorized.

G.   While an NSZ is in effect, members shall not stop pedestrians entering or exiting the NSZ.  However, pedestrian stops based on reasonable suspicion, probable cause, or in response to lookouts are authorized.

H.   Generally, members shall not search vehicles as part of an NSZ Entry Checkpoint operation.  However, if in the course of conducting the Entry Checkpoint, a member develops reasonable suspicion or probable cause to believe that a crime is being committed, the member may detain the motorist to the extent reasonably necessary to investigate.  Under such circumstances, a motorist may consent to a search, or, if incident to arrest, a search of the interior passenger area of the vehicle (including containers) may be performed.

V.   **PROCEDURAL GUIDELINES**

A.   An NSZ location shall be selected with the primary purpose of addressing a neighborhood violent crime problem.  Evidence to support the existence of a neighborhood violent crime problem may include:

1.   Pertinent violent crime data;

2.   Information contained in citizen and community reports and complaints relevant to documented violent crimes; and

3.   Information gathered from criminal intelligence sources relevant to documented violent crimes.

B.   Documentation of the evidence prepared based on Part V.A above, and an explanation of how the evidence supports the purpose of the NSZ as described in Part IV.A above, shall be preserved and attached to the NSZ After-Action Report associated with the NSZ.

C.   In selecting an NSZ location, the following criteria shall be considered:

1.   NSZ operations shall not unnecessarily interfere with routine community activities;

2.   NSZ operations shall cause minimum delays to normal traffic patterns;

3.   There shall be sufficient space for deploying members assigned to each NSZ Entry Checkpoint;

4.   There shall be sufficient space on the roadway at each NSZ Entry Checkpoint for deploying one (1) or more marked MPD vehicles such that the vehicle(s) are clearly visible; and

5.   There shall be sufficient space for deploying equipment to alert vehicle operators approaching each NSZ Entry Checkpoint.

D.   Each NSZ Entry Checkpoint shall be staffed by a minimum of five (5) officers and one (1) official the rank of Sergeant or above.

E.   Members shall be relieved as appropriate at all NSZ Entry Checkpoints only after replacement personnel are on site.

F.   A minimum of three (3) patrol vehicles and two (2) foot, bicycle or motor-scooter units shall be assigned to the NSZ twenty-four (24) hours per day for the duration of the NSZ.

G.   Whenever an NSZ is declared, a member of the (1) Homicide and Sex Offense Branch; (2) affected Police District Investigations Branch; and (3) Intelligence Fusion Division shall be present within the NSZ.

H.   When an NSZ Entry Checkpoint is non-operational during the approved NSZ time period, a minimum of one (1) sworn member in a marked MPD vehicle, with emergency lights activated, shall be assigned to the Checkpoint.

I.   An official, of at least the rank of Lieutenant, shall be designated as the NSZ Manager and may increase, but not decrease, the NSZ staffing depending on factors such as location, level of criminal activity, and number of potential vehicular stops.

J.   The Field Commander shall visit and oversee operational NSZ Entry Checkpoints to the extent other MPD responsibilities permit.

K.   Members assigned to an NSZ Entry Checkpoint shall be equipped with a visibility vest, flashlight, cones, flares, Notice of Infraction (NOI) books, PD Form 61-D (Violation Notice) books, and PD Forms 76.

L.   Members assigned to an NSZ Entry Checkpoint shall:

1.   Identify himself/herself, his/her assigned District or element, the reason for the NSZ, and the reason for the vehicle stop;

2.   Inquire whether the operator of the stopped vehicle has a <u>legitimate</u> reason for entering the NSZ as follows:

Legitimate reasons are:

a.   The person resides in the NSZ;

b.   The person is employed in the NSZ or is on a commercial delivery;

c.   The person attends school or a day-care facility, or is taking a child to, or picking up a child from, a school or day-care facility in the NSZ;

d.   The person is a relative of a person who resides in the NSZ;

e.   The person is seeking medical attention, is elderly, or is disabled;

f.   The person is attempting to attend a verified organized civic, community or religious event within the NSZ; or

g.   An official the rank of Sergeant or above assigned to the NSZ approves the entry for a reason other than those listed above when there are exigent circumstances;

3.   Request operator identification only for persons who claim to be residents in the NSZ to verify their residency;

4.   Require proof of the reason for entry, including, but not limited, to a telephone number of the address to which the person seeks entry (which the member may use to verify that the resident/occupant expects the person(s)) and/or an invitation to a verified organized civic, community, or religious event located within the NSZ.

a.   Members shall limit the time spent verifying the accuracy of the reason given so as to not unduly delay efficient operation of the NSZ Entry Checkpoint.

      b.    Members are reminded that these inquiries are not to be unreasonably intrusive (e.g., Do not question persons about political or religious beliefs or about group memberships).

      c.    Members shall not to travel to the location that an operator identifies as his/her destination.

      NOTES: (1) The operator must provide information reasonably sufficient for the member to verify the accuracy of the reason. (2) The operator cannot be compelled to proffer a reason for entry into an NSZ; however, failing to provide a reason for entry is sufficient for denial of entry.

5.    Deny a stopped vehicle access to the NSZ when it is determined that the motor vehicle operator does not have a legitimate reason for entering the NSZ; and

6.    Be permitted to arrest any motor vehicle operator who refuses to comply with lawful police direction with *Failure to Obey* (Title 18 DCMR § 2000.2).

M.    The NSZ Manager shall:

1.    Prior to establishing an NSZ Entry Checkpoint:

      a.    Verify that adequate natural lighting or street lighting is present both around the NSZ perimeter and at the Checkpoint;

      b.    Verify that adequate space is available for safe operations, deployment of personnel, traffic flow, and parking for the vehicles of arrested persons;

      c.    Notify the affected District's Watch Commander of the NSZ beginning and ending dates, location (neighborhood), Entry Checkpoint locations, and time periods of operation of the Checkpoints; and

      d.    Conduct roll call with all members assigned to the NSZ;

2.    Maintain a list of the names and rank of all members assigned to work in the NSZ while the NSZ is operational and a list of the names and rank of all members assigned to work on NSZ Entry Checkpoints while the NSZ Entry Checkpoint is operational;

3.    Ensure all stop locations are clearly defined using barricades, lights, cones, and/or flares to reduce excessive traffic backup;

4.    Ensure a marked vehicle is positioned in the event a vehicular traffic stop is necessary;

5.  Ensure that members employ the stop method that requires that every vehicle attempting entry is stopped;

6.  Ensure, when practical, at least two (2) members approach each stopped vehicle;

7.  Approve the temporary suspension of an NSZ Entry Checkpoint in the event that all assigned members become involved with multiple stops, and/or traffic is unduly affected and approve the resumption of the Checkpoint as appropriate, and:

    a.  Record on the related PD Form 907-A, the period of time for the temporary suspension; and

    b.  Notify the District Watch Commander at the beginning of each suspension and when normal activities are resumed;

8.  Ensure that each instance of a stopped vehicle is documented on a PD Form 76 (Attachment B) as follows:

    a.  For vehicles that are denied entry (including those that are denied because the operator refuses to provide information), the PD Form 76 shall include the operator information, vehicle description, vehicle tag number, and reason for denial.

    b.  For vehicles that are permitted entry, the PD Form 76 shall include the operator's information, vehicle description, and vehicle tag number; and

9.  Transmit a completed PD Form 907-A and all other pertinent documentation, to the District Watch Commander at the end of each tour of duty in which an NSZ Entry Checkpoint was operational.

N.  The Police District Watch Commander shall:

1.  Record the NSZ notification/information on the Watch Commander's Report and notify, in turn, the Command Information Center (CIC) of the NSZ beginning and ending dates, location (neighborhood), Entry Checkpoint locations, and time periods of operation of each Checkpoint;

2.  Notify the CIC of each temporary suspension of an NSZ Entry Checkpoint operation;

3.  Review, sign, and date the PD Form 907-A;

4.  Ensure that a copy of the signed and dated PD Form 907-A is forwarded to the CIC and the Police District Administrative Office; and

5. Ensure that all summary statistics from each NSZ Entry Checkpoint are placed in the NSZ Central File and are also transmitted to the CIC and the Patrol Services and School Security Bureau prior to the end of the tour of duty.

O. The Police District Commander shall:

1. When requesting the establishment of an NSZ in his/her District, meet the requirements of Parts V.A and V.C above and ensure that the NSZ plan includes the following:

   a. Procedures for disrupting routine traffic access so that the traffic is funneled to the NSZ Entry Checkpoint(s);

   b. Deployment of an arrest processing vehicle in close proximity to each NSZ Entry Checkpoint; and

   c. Request that a member of the CIC conduct live monitoring of any CCTV (Closed-Circuit Television) camera located in the NSZ for the duration of the NSZ;

2. Ensure that only members who have successfully completed all required training participate in the NSZ Entry Checkpoints;

3. Prepare a memorandum to the Chief of Police, through the chain of command, that includes:

   a. Proposed date(s) and times that an area should be declared an NSZ;

   b. Evidence used in making the selection of the location, date(s), and times;

   c. Justification for the determination consistent with Parts V.A and V.C above;

   d. Plan specifying the resources to be used to mark the area as an NSZ and the deployment of personnel and resources to the NSZ; and

   e. Detailed map outlining the boundaries of the proposed NSZ and the location of the NSZ Entry Checkpoints;

4. Upon the approval of the Chief of Police for establishing an NSZ and prior to the establishment of the NSZ:

a.   Ensure the procurement and distribution of a sufficient quantity of notices containing information regarding the NSZ to residences and businesses;

b.   Ensure the procurement of a sufficient quantity of posters entitled, "Warning, This Area Has Been Declared A Neighborhood Safety Zone", from the Reproduction Section, Police Business Services Division, Corporate Support Bureau; and

c.   Ensure the NSZ posters are posted around the borders of the NSZ; and are secured to available objects (e.g., lamp posts) or placed on wooden stakes;

NOTE:  Any member who observes an individual injuring, breaking, or destroying any NSZ poster may charge the individual with a misdemeanor *Destruction of Property* (D.C. Official Code § 22-303).

5.   Ensure that at least one (1) member assigned to the affected Patrol Service Area(s) included within the NSZ is assigned to each Entry Checkpoint and also the staffing required by Parts V.D, V.F, V.G, and V.H above;

6.   Upon the expiration of the NSZ time period, direct members of his/her command to promptly remove all signs and other identifying documents and equipment from the boundaries and areas within the former NSZ;

7.   Following the expiration of the NSZ time period, submit an NSZ After-Action Report to the Chief of Police, through the chain of command, within five (5) business days, with the following information:

a.   Location of the NSZ, including the exact boundaries;

b.   Location of the Entry Checkpoint(s);

c.   Personnel and other resources allocated to the NSZ;

d.   Time(s) and date(s) of:

(1)   Distribution of notices to the residences and businesses located within the NSZ;

(2)   Period that the NSZ was implemented;

(3)   Marking of the boundaries with posters; and

(4)   Removal of all posters from the former NSZ;

e.  Number of locations at which posters were placed;

f.  Number and type of crime index offenses that occurred in the NSZ during the NSZ time period;

g.  Total number of vehicles stopped, vehicles denied access, and any arrests related to the NSZ;

h.  Number and type of complaint(s) received as a result of NSZ activities;

i.  Any significant event or unusual incident that occurred in the NSZ during the NSZ time period, and

j.  After-action evaluation of the NSZ operation;

8.  When the NSZ abuts the boundary of another Police District, notify the Commanding Officer of the affected district;

9.  Establish and maintain a Police District NSZ Central File as follows:

a.  A separate folder shall be established for each NSZ;

b.  The folder, at a minimum, shall include:

(1)  Copy of the recommendation memorandum submitted to the Chief of Police with the signature of approval of the Chief;

(2)  All documents supporting the recommendation for the establishment of the NSZ;

(3)  Record of when, how, and by whom the NSZ notices and posters were distributed and posted;

(4)  Enforcement documentation and crime statistics for the NSZ time period;

(5)  Copies of the related PD Forms 907-A, but NOT PD Forms 76;

(6)  Information about any unusual or significant incident; and

(7)  Copy of the NSZ After-Action Report;

10.  Forward the original NSZ documents to the Assistant Chief, Patrol Services and School Security Bureau, who will maintain all NSZ records and statistics;

11.   Forward to the General Counsel within seventy-two (72) hours of the completion of each NSZ Entry Checkpoint all PD Forms 76; and

12.   Ensure that no data gathered at NSZ Entry Checkpoints for completion of PD Forms 76 is entered into any District of Columbia Government data processing system or electronic data entry system.

P.   The Commanding Officer/Director, Metropolitan Police Academy, shall ensure that the CIC is provided an up-to-date listing of all members trained on the NSZ procedures.

Q.   The CIC shall:

1.   Page the information provided concerning the NSZ under Parts N.1 and N.2 above to the command staff; and

2.   Release to MPD officials the name(s) of NSZ-trained member(s) when provided with the CIC-designated code for such information.

R.   The Director, Corporate Support Bureau, shall be responsible for the preparation of the NSZ warning posters.

S.   The Assistant Chief, Patrol Services and School Security Bureau, shall forward to the Chief of Police each request for the establishment of an NSZ he/she has approved.

T.   The General Counsel shall:

1.   Review all requests for the establishment of an NSZ for legal sufficiency;

2.   Advise the Chief of Police, in writing, whether the request for an NSZ meets legal requirements; and

3.   Receive all PD Forms 76, and either:

a.   Within three (3) business days of receipt, provide all such PD Forms 76 to the Office of the Attorney General for the District of Columbia, Civil Litigation Division for filing under seal to the extent that such handling is in accordance with an order of a court of competent jurisdiction, or

b.   Maintain all such PD Forms 76 in a confidential file within the Office of the General Counsel of the Metropolitan Police Department, providing only such copies of PD Forms 76 as may be authorized by a court of competent jurisdiction to counsel for the District of Columbia and persons identified in the forms.

U.  The Chief of Police shall approve or disapprove each request for the establishment of an NSZ, and authorize any extension as appropriate.

## VI.    CROSS REFERENCES

A.  D.C. Official Code § 22-303 (Malicious Burning, Destruction, or Injury of Another's Property)

B.  Title 18 (Vehicles and Traffic) DCMR § 2000.2

C.  *Maxwell v. City of New York, et al.*, 102 F.3d 664 (1996)

D.  *Illinois v. Lidster*, 540 US 419 (2004)

E.  *Indianapolis v. Edmond,* 531 US 32 (2000)

## VII.   ATTACHMENTS

Attachment A: PD Form 907-A (Neighborhood Safety Zone Manager's Report

Attachment B: PD Form 76 (Stop or Contact Report) (Revised 04/19/05)

Cathy L. Lanier
Chief of Police

CLL:JAE:HB:PAS:JGW
**

PD Form 907-A (061008)



**Metropolitan Police Department**
**Washington, D.C.**
**Neighborhood Safety Zone (NSZ)Manager's Report**



| Date:  [DD/MM/YY] | District: | NSZ Lieutenant: [Print:  Last, First, Middle Initial] |
|---|---|---|

**NSZ Entry Checkpoint Locations:  [Intersection(s) and/or Address(es)]**

**NSZ Purpose:**

| Time Began: [Hour, Minute] | Time Ended: [Hour, Minute] |
|---|---|
| Time Paused: [Hour, Minute] | Time Resumed: [Hour, Minute] |

**District Watch Commander  [Rank, Last Name, First Name, Badge Number] Notified:  [Include Date /Time Notified, Including for Temporary Suspensions]**

**Stop Procedure:  ALL VEHICLES SHALL BE STOPPED.**

| ARRESTS | | | | |
|---|---|---|---|---|
| Arrest Number | CCN | Name of Arrestee | Charge(s) | Disposition |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

| NSZ Lieutenant 's Full Signature: [First Name, Middle Initial, Last Name] | Date of Signature: |
|---|---|

**Reviewed by Watch Commander:  [Print Rank, First Name, Middle Initial, Last  Name, Badge Number]**

| Watch Commander's Full Signature: [First Name, Middle Initial, Last Name] | Date of Signature: |
|---|---|

SO-08-06 (Neighborhood Safety Zones)
Attachment A
PD Form 907-A, NSZ Manager's Report
Revised 06/13/08

 

### Metropolitan Police Department
### Washington, D.C.
### Neighborhood Safety Zone (NSZ)Manager's Report

**SUMMARY DATA/MEMBERS ASSIGNED**

## I.  Summary Data

| 1.  Total # Vehicles Passed Through NSZ: | 2.  Total # Vehicles Stopped From Entering NSZ: | 3.  Total #  Vehicles Failing to Stop at NSZ: |
|---|---|---|
| 4.  Total # of NOIs Issued: | 5.  Total # of PD 76s Completed: | 6.  Total # of PD 61-Ds Issued: |

7.  Total # of NSZ-Related Arrests:

## II.  Members Assigned to NSZ Checkpoints

| Rank | Name [Last, First, Middle Initial] |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

SO-08-06 (Neighborhood Safety Zones)
Attachment A
PD Form 907-A, NSZ Manager's Report
Revised 06/13/08

PD Form 76 Stop or Contact Report (Revised 04/19/05)          Card # (yymmdd-xxxx)

Date (mm/dd/yy) & military time (hh:mm)

Vehicle · Spot check · Stop
Pedestrian · Contact · Stop CCN# (yy-nnnnnn)
Bicycle · Contact · Stop

Location

District and PSA

**Duration of Stop_____ [minutes]**

| Last Name | First name | Middle name | Nickname |
|---|---|---|---|
| · Passenger in vehicle | | | |
| Home address (street number and name, city, state, zip) | | | Phone number ( ) |
| Gender | Race/Ethnicity | | DOB (mm/dd/yy) |
| · Male · Female | · American Indian/Alaskan Native · Asian · Arab American | · Black/African American · Hispanic/Latino · White · Other | |
| Height | Weight | Eye color | Hair color/style |
| Complexion | Facial hair, scars, tattoos, clothing, etc. | | |
| Driver's license/permit number and state | | | |

(Operator/Pedestrian Information)

---

PD Form 76 Stop or Contact Report (Revised 04/19/05)          Card # (yymmdd-xxxx)

| Vehicle type | Make | Model | | Year |
|---|---|---|---|---|
| Color (top/bottom) | Tag/state registration number | State | VIN | |
| Owner's last name | Owner's first name | Owner's address (st., no.#, name, city, state, zip) | | |
| Dents/Other identifiers | | | | |

(VEHICLE INFORMATION)

Primary reason for contact/stop (choose one)
· Moving violation—N/Or
· Equipment violation
· Registration violation
· Call for service (suspect/vehicle description)
· Pre-existing knowledge
· Special detail/checkpoints
· Suspicious activity
· Other

Disposition of the contact/stop
· No action
· Verbal warning (traffic)
· Other warning issued
· Fine issued
· Operator arrested
· Passenger(s) arrested
  # of arrests:

Choose all that apply (Vehicle & stop report)
· Vehicle impounded
· Report taken
· Drugs seized
· Weapons seized
· Search conducted
  Consent to search?
  Yes    No
· Other

Additional remarks

(JUSTIFICATION & OUTCOME)

| Reporting Member (Print Name) | Element/CAD# | Signature |
|---|---|---|
| Reviewing Official (Print Name) | Element/CAD# | Signature |

Page 11 of 11

SO-08-06 (Neighborhood Safety Zones)
Attachment B
PD Form 76 Stop or Contact Report
Revised 4/19/05

Answer Exh. 2
MPD Special Order-08-06,
effective June 4, 2008

# SPECIAL ORDER



**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Subject** | |
| **Neighborhood Safety Zones** | |
| **Topic   Series   Number** | |
| **SO - 08 - 06** | |
| **Effective Date** | |
| **June 4, 2008** | |
| **Related to:** | |
| General Order 304.10 (Police-Citizen Contacts, Stops and Frisks), Effective July 1, 1973 | |
| GO-OPS-301.03 (Vehicular Pursuits), Effective February 25, 2003 | |

| I. | Background | Page 1 | | IV. | Regulations | Page 2 |
|---|---|---|---|---|---|---|
| II. | Policy | Page 1 | | V. | Procedural Guidelines | Page 3 |
| III. | Definitions | Page 1 | | | | |

## I.  BACKGROUND

The establishment of Neighborhood Safety Zones is an effective law enforcement tool for addressing violent crime. Vehicles are common instrumentalities of crime, particularly armed violent crime.  It is in the interest of law enforcement to prohibit vehicles with no legitimate purpose to enter neighborhoods that have been victimized by spikes in violent crime. The U.S. Courts have found that such zones are constitutional when limited in scope, and when conducted for a legitimate law enforcement purpose.

This Special Order provides guidance for establishing Neighborhood Safety Zones, consistent with constitutional requirements that provide high police visibility, prevent and deter crime, safeguard officers and community members, and create safer District of Columbia neighborhoods.

## II.  POLICY

It is the policy of the Metropolitan Police Department to lawfully establish Neighborhood Safety Zones to promote the health, safety, and welfare of the District of Columbia residents and visitors.

## III.  DEFINITIONS

When used in this directive, the following terms shall have the meaning designated:

    1.    Member – Sworn employee of the Metropolitan Police Department (MPD).

    2.    Neighborhood Safety Zone (NSZ) – Delineated geographic area designated by the Chief of Police in response to documented crimes of violence the purpose of which is to provide high police visibility, prevent and deter crime, safeguard officers and community members, and create safer District of Columbia neighborhoods.

3.  Neighborhood Safety Zone Checkpoint – A location at the perimeter of the NSZ where vehicles are stopped for the purpose of determining whether the operator has a legitimate reason for entering the NSZ.

4.  Neighborhood Safety Zone Manager – Member the rank of Lieutenant or above who manages the individual Neighborhood Safety Zone operation.

5.  Neighborhood Safety Zone (NSZ) Manager's Report (PD Form 907-A) (Attachment A) – Report completed by the NSZ Manager that documents why, when, where, and how an NSZ was conducted.

## IV.    REGULATIONS

A.  An NSZ may be established solely in response to documented crimes of violence occurring in a designated location.

1.  The NSZ shall be established for a specific and legitimate law enforcement purpose, (e.g., recently reported criminal incident(s) including homicides, shootings, robberies, and other offenses as approved by the Chief of Police).

2.  The NSZ shall be targeted to promote community safety interests while minimizing interference with normal community activities.

3.  Consistent with Part V.F below, each NSZ checkpoint shall be conducted systematically so as to minimize or eliminate police officer discretion in stopping vehicles from entering the NSZ.

4.  The NSZ shall be established for no more than five (5) days, unless the Chief of Police approves an extension of no more than five (5) additional days.

B.  The recommendation to establish an NSZ, and the selection of the location for the NSZ, shall be made by an official the rank of Commander and above.

C.  Each NSZ shall be approved, in advance, by the Chief of Police or designee, provided that the designee shall not hold a rank lower than Assistant Chief of Police.

D.  Only those members who have successfully completed all NSZ-related training required by the Chief of Police may participate in the implementation of an NSZ. NSZ-related training shall include specific limitations on members' exercise of discretion in determining whether a vehicle will be permitted to enter the NSZ.

E.  Each member assigned to an NSZ shall wear an MPD-approved visibility vest and be provided other required equipment (e.g., cones, light tower).

F.    For the purpose of implementing an NSZ, members shall not stop vehicles that are exiting the NSZ.

G.    For the purpose of implementing an NSZ, members shall not stop pedestrians entering or exiting the NSZ.

H.    Generally, vehicles shall be not searched during an NSZ operation.  However, if in the course of conducting an NSZ, a member develops reasonable suspicion or probable cause to believe that a crime is being committed, the member may detain the motorist to an extent reasonably necessary to investigate.  Under such circumstances, a motorist may consent to a search, or, if incident to arrest, a search of the interior passenger area of the vehicle (including containers) may be performed.

V.    **PROCEDURAL GUIDELINES**

A.    An NSZ location shall be selected with the primary purpose of addressing a neighborhood violent crime problem.  Evidence to support the existence of a neighborhood violent crime problem may include:

1.    Pertinent violent crime data;

2.    Information contained in citizen and community reports and complaints relevant to documented violent crimes; and

3.    Information gathered from criminal intelligence sources relevant to documented violent crimes.

B.    Documentation of the evidence prepared based on Part V.A above, and an explanation of how the evidence supports the purpose of the NSZ as described in Part IV.A above, shall be preserved and attached to the PD Form 907-A [Neighborhood Safety Zone (NSZ) Manager's Report] associated with the NSZ.

C.    In selecting an NSZ location, the following criteria shall be considered:

1.    The NSZ shall not unnecessarily interfere with routine community activities;

2.    There shall be sufficient space for deploying members assigned to the NSZ;

3.    There shall be sufficient space on the roadway for deploying one (1) or more marked MPD vehicles such that the vehicle(s) are clearly visible;

4.    There shall be sufficient space for deploying equipment to alert vehicle operators approaching the NSZ;

5.      NSZ operations shall cause minimum delays to normal traffic patterns; and

6.      The area shall permit a sufficient number of checkpoints for establishing an adequate perimeter.

D.      Each NSZ checkpoint shall be staffed by a minimum of five (5) officers and one (1) official the rank of Sergeant or above.

E.      An official, of at least the rank of Lieutenant, shall be designated as the NSZ Manager and may increase, but not decrease, the NSZ staffing depending on factors such as location, level of criminal activity, and number of potential stops.

F.      Each member assigned to an NSZ shall:

1.      Be equipped with a visibility vest, flashlight, cones, flares, Notice of Infraction (NOI) books, PD Form 61-D (Violation Notice) books, and PD Forms 76 (Stop or Contact Report);

2.      Identify himself/herself, his/her assigned District or element, the reason for the NSZ, and the reason for the vehicle stop;

3.      Inquire whether the operator of the stopped vehicle has a <u>legitimate</u> reason for entering the NSZ as follows:

NOTE:  Absent exigent circumstances, legitimate reasons are:

a.      The person resides in the NSZ;

b.      The person is employed in the NSZ or is on a commercial delivery;

c.      The person attends school or a day-care facility, or is taking a child to, or picking up a child from, a school or day-care facility in the NSZ;

d.      The person is a relative of a person who resides in the NSZ;

e.      The person is seeking medical attention, is elderly, or is disabled; and/or

f.      The person is attempting to attend a verified organized civic, community or religious event within the NSZ; or

g.      An official the rank of Sergeant or above assigned to the NSZ approves the entry.

4.   Request operator identification when attempting to determine the legitimacy of the reason for entering an NSZ.

5.   Require proof of the reason for entry; the operator must provide information sufficient for the member to verify the accuracy of the reason. This may include, but is not limited to, a telephone number of the address to which the person seeks entry (which the member may use to verify that the resident/occupant expects the person(s)) and/or an invitation to a verified organized civic, community, or religious event located within the NSZ.

NOTE: Persons cannot be compelled to proffer a reason for entry into an NSZ; however, failing to provide a reason for entry is sufficient for denial of entry.

6.   Deny a stopped vehicle access to the NSZ when it is determined that the motor vehicle operator does not have a legitimate reason for entering the NSZ; and

7.   Arrest any motor vehicle operator who refuses to comply with lawful police direction with *Failure to Obey* (Title 18 DCMR § 2000.2).

G.   The NSZ Manager shall:

1.   Prior to establishing the NSZ, the NSZ Manager shall:

a.   Verify that adequate natural lighting or street lighting is present;

b.   Verify that adequate space is available for safe operations, deployment of personnel, traffic flow, and parking for the vehicles of arrested persons;

c.   Notify the affected District's Watch Commander of the anticipated location, date, and time; and

d.   Conduct roll call with all members assigned to the NSZ;

2.   Ensure all stop locations are clearly defined using barricades, lights, cones, and/or flares to reduce excessive traffic backup;

3.   Ensure a marked vehicle is positioned in the event a vehicular traffic stop is necessary;

4.   Ensure that members employ the stop method that requires that every vehicle attempting entry is stopped;

5.   Ensure, when practical, at least two (2) members approach each stopped vehicle;

6. In the event that all assigned members become involved with multiple stops and/or traffic is affected, approve the temporary suspension of the NSZ checkpoint stops until the vehicular congestion is relieved;

7. Ensure that each instance of a stopped vehicle is documented on a PD Form 76 (Stop or Contact Report) (Attachment B);

   a. For vehicles that are denied entry, the PD Form 76 shall include the operator information, vehicle description, vehicle tag number, and reason for denial.

   b. For vehicles that are permitted entry, and in cases where the operator elects to leave the checkpoint without providing information, the PD Form 76 shall include the vehicle tag number, and where appropriate, the reason for entry.

8. Ensure that the documentation required by Part V.B above is attached to the PD Form 907-A; and

9. Transmit the original PD Form 907-A and all accompanying documentation to the Watch Commander prior to the end of the tour of duty in which the NSZ was concluded.

H. The Police District Watch Commander shall:

1. Record the NSZ notification on the Watch Commander's Report and notify, in turn, the Command Information Center (CIC);

2. Review, sign, and date the PD Form 907-A; and

3. Ensure that a copy of the signed and dated PD Form 907-A is forwarded to the CIC and the Police District Administrative Office.

I. The Police District Commander shall:

1. When requesting the establishment of an NSZ in his/her District, meet the requirements of Part V. A and V.C above;

2. Ensure that only members who have successfully completed all required training participate in the NSZ;

3. Prepare a memorandum to the Chief of Police, through the chain of command, that includes:

   a. Proposed date(s) and times that an area should be declared a NSZ;

   b. Evidence used in making the selection of the location, date(s), and times;

    c.    Justification for the determination consistent with Part V.A and Part V.C above;

    d.    Plan specifying the resources to be used to mark the area as an NSZ and the deployment of personnel and resources to the NSZ; and

    e.    Detailed map outlining the boundaries of the proposed NSZ;

4. Upon the approval of the Chief of Police for establishing an NSZ and prior to the establishment of the NSZ:

    a.    Ensure the procurement and distribution of a sufficient quantity of notices containing information regarding the NSZ to residences and businesses;

    b.    Ensure the procurement of a sufficient quantity of posters entitled, "Warning, This Area Has Been Declared A Neighborhood Safety Zone", from the Reproduction Section, Police Business Services Division, Corporate Support Bureau;

    c.    Ensure the NSZ posters are properly completed; located, at a minimum, around the borders of the NSZ; and secured to available objects (e.g., lamp posts) or placed on wooden stakes;

            NOTE: Any member who observes an individual injuring, breaking, or destroying any NSZ poster may charge the individual with a misdemeanor *Destruction of Property* (D.C. Official Code § 22-303).

5. Ensure that at least one (1) member assigned to the affected Patrol Service Area(s) included within the NSZ is assigned to each checkpoint;

6. Upon the expiration of the NSZ time period, direct members of his/her command to promptly remove all signs and other identifying documents and equipment from the boundaries and areas within the former NSZ;

7. Following the expiration of the NSZ time period, submit a report to the Chief of Police, through the chain of command, within ten (10) business days, with the following information:

    a.    Location of the NSZ, including the exact boundaries;

    b.    Personnel and other resources allocated to the NSZ;

    c.    Time(s) and date(s) of:

        (1)    Distribution of notices to the residences and businesses located within the NSZ;

        (2)    Period that the NSZ was implemented;

        (3)    Marking of the boundaries with posters; and

        (4)    Removal of all posters from the former NSZ;

d.    Number of locations at which posters were placed;

e.    Number and type of crime index offenses that occurred in the NSZ during the NSZ time period;

f.    Total number of vehicles stopped, vehicles denied access, and any arrests related to the NSZ;

g.    Number and type of complaint(s) received as a result of NSZ activities;

h.    Any significant event or unusual incident that occurred in the NSZ during the NSZ time period, and

i.    After-action evaluation of the NSZ operation;

8.    When the NSZ abuts the boundary of another Police District, notify the Commanding Officer of the affected district;

9.    Establish and maintain a Police District file as follows:

a.    A separate folder shall be established for each NSZ;

b.    The folder, at a minimum, shall include:

        (1)    Copy of the recommendation memorandum submitted to the Chief of Police with the signature of approval of the Chief;

        (2)    All documents supporting the recommendation for the establishment of the NSZ;

        (3)    Record of when, how, and by whom the NSZ notices and posters were distributed and posted;

        (4)    Enforcement documentation and crime statistics for the NSZ time period;

        (5)    Information about any unusual or significant incident; and

       (6)    A copy of the final report to the Chief of Police.

J.    The Director, Corporate Support Bureau, shall be responsible for the preparation of the NSZ warning posters.

K.    The Assistant Chief, Patrol Services and School Security Bureau, shall forward to the Chief of Police each request for the establishment of an NSZ he/she has approved.

L.    The General Counsel shall:

    1.    Review all requests for the establishment of an NSZ for legal sufficiency; and

    2.    Advise the Chief of Police, in writing, whether the request for an NSZ meets legal requirements.

M.    The Chief of Police shall:

    1.    Approve or disapprove each request for the establishment of an NSZ.

## VI.   CROSS REFERENCES

A.    D.C. Official Code § 22-303 (Malicious Burning, Destruction, or Injury of Another's Property)

B.    Title 18 (Vehicles and Traffic) DCMR § 2000.2

## VII.   ATTACHMENTS

Attachment A: PD Form 907-A (Neighborhood Safety Zone Manager's Report;

Attachment B: PD Form 76 (Stop or Contact Report) (Revised 04/19/05)

Cathy L. Lanier
Chief of Police

CLL:JAE:HB:PAS:JGW

PD Form 907-A (051108)

 

**Metropolitan Police Department**
**Washington, D.C.**
**Neighborhood Safety Zone (NSZ) Manager's Report**

| Date: [DD/MM/YY] | District: | NSZ Lieutenant: [Print: Last, First, Middle Initial] |
|---|---|---|

**Checkpoint Locations:** [Intersection(s) and/or Address(es)]

**Purpose:**

| Time Began: [Hour, Minute] | Time Ended: [Hour, Minute] |
|---|---|
| Time Paused: [Hour, Minute] | Time Resumed: [Hour, Minute] |

**District Watch Commander Notified:** [Rank, Last Name, First Name, Badge Number, Date/Time Notified]

**Stop Procedure:** [For Example: All Vehicles; Every Third Vehicle]

| Total # Vehicles Passed Through NSZ: | Total # Vehicles Stopped From Entering NSZ: | Total # Vehicles Failing to Stop at NSZ: |
|---|---|---|
| Total # of NOIs Issued: | Total # of PD 76s Completed: | Total # of PD 61-Ds Issued: |

### ARRESTS

| Arrest Number | CCN | Name of Arrestee | Charge(s) | Disposition |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| NSZ Lieutenant's Full Signature: [First Name, Middle Initial, Last Name] | Date of Signature: |
|---|---|

**Reviewed by Watch Commander:** [Print Rank, First Name, Middle Initial, Last Name, Badge Number]

| Watch Commander's Full Signature: [First Name, Middle Initial, Last Name] | Date of Signature: |
|---|---|

SO-08-06 (Neighborhood Safety Zones)
Attachment A
PD Form 907-A NSZ Supervisor's Report
Rev. 06/04

PD Form 76 Stop or Contact Report (Revised 04/19/05)

Card # (yymmdd-xxxx): _____

| Date (mm/dd/yy) & military time (hh:mm) | | | |
|---|---|---|---|
| ___ / ___ / ___  ___ : ___ | ☐ Vehicle:<br>☐ Pedestrian:<br>☐ Bicycle: | ☐ Spot check ☐ Stop<br>☐ Contact ☐ Stop  *CCN# (yy-nnnnnn):* _____<br>☐ Contact ☐ Stop | |
| Location | | | District and PSA |

**"Duration of Stop_____ (minutes)"**

| Last name | First name | Middle name | Nickname |
|---|---|---|---|
| ☐ Passenger in vehicle | | | |

*Operator/Pedestrian Information*

| Home address (street number and name, city, state, zip) | | Phone number<br>(    ) |
|---|---|---|

| Gender | Race/Ethnicity | DOB (mm/dd/yy) |
|---|---|---|
| ☐ Male<br>☐ Female | ☐ American Indian/Alaskan Native  ☐ Black/African American<br>☐ Asian  ☐ Hispanic/Latino  ☐ White<br>☐ Arab American  ☐ Other___ | ___ / ___ / ___ |

| Height | Weight | Eye color | Hair color/style |
|---|---|---|---|

| Complexion | Facial hair, scars, tattoos, clothing, etc. |
|---|---|

Driver's license/permit number and state

---

PD Form 76 Stop or Contact Report (Revised 04/19/05)

Card # (yymmdd-xxxx): _____

*VEHICLE INFORMATION*

| Vehicle type | Make | Model | | Year |
|---|---|---|---|---|
| Color (top/bottom) | Tag/Bike registration number | State | VIN | |
| Owner's last name | Owner's first name | Owner's address (St, No#, Name, City, State, Zip) | | |
| Dents/Other Identifiers: | | | | |

*JUSTIFICATION & OUTCOME*

| Primary reason for contact/stop (Choose one) | Disposition of the contact/stop | (Choose all that apply) |
|---|---|---|
| ☐ Moving violation—*NOI:* _____<br>☐ Equipment violation<br>☐ Registration violation<br>☐ Call for service (suspect/vehicle description)<br>☐ Pre-existing knowledge<br>☐ Special detail/checkpoints<br>☐ Suspicious activity<br>☐ Other___ | ☐ No action<br>☐ Verbal warning (traffic)<br>☐ Other warning issued<br>☐ Fine issued<br>☐ Operator arrested<br>☐ Passenger(s) arrested<br>    # of arrests: _____ | ☐ Vehicle impounded<br>☐ Report taken<br>☐ Drugs seized<br>☐ Weapons seized<br>☐ Search conducted<br>    *Consent to search?*<br>    Yes ☐  No ☐<br>☐ Other: ___ |

Additional remarks

_____
_____
_____

| Reporting Member (Print Name) | Element/CAD# | Signature |
|---|---|---|
| Reviewing Official (Print Name) | Element/CAD# | Signature |

Attachment B
SO-08-06
06/03/08